**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**SCHOOL-LINK TECHNOLOGIES, INC.,**

    **Plaintiff,**

    v.                                             Case No. 05-2088-JWL

**APPLIED RESOURCES, INC.,**

    **Defendant.**

_____

**MEMORANDUM AND ORDER**

This case involves a business dispute between the plaintiff School-Link Technologies, Inc. and defendant Applied Resources, Inc. arising from Applied Resources supplying School-Link with personal access devices and kiosks for use in school food service programs. This matter comes before the court on Plaintiff's Motion to Transfer Action or, In the Alternative, to Transfer Defendant's Counterclaim (doc. 6) to the United States District Court for the Central District of California. For the reasons explained below, School-Link's motion is denied.

**NATURE OF THE CASE**

School-Link provides food service solutions, including computer software, to schools throughout the country. Applied Resources is in the business of supplying computer hardware for point-of-sale systems. Applied Resources manufactures and sells "kiosks," which are

computers encased in secure, rugged chassis on which card readers, currency and coin acceptors, or other payment devices are mounted.

School-Link's complaint alleges that the parties entered into an agreement whereby Applied Resources agreed to supply School-Link with 2,000 personal access devices (PADs) and 25 kiosks for a total price of $326,807.60. The parties agreed that the PADs and kiosks would be delivered in installments over a period of eight months. School-Link paid Applied Resources $280,798.42 and Applied Resources delivered 1,417 PADs and 15 kiosks. Then, Applied Resources suddenly halted delivery, failed to deliver the remaining 583 PADs and 10 kiosks, and did not refund School-Link's prepayment for the undelivered goods.

According to the allegations in Applied Resources' answer and counterclaim, it refused to deliver the remaining PADs and kiosks to School-Link because it discovered that "it had been bamboozled by" School-Link in conjunction with a contract with the New York City Department of Education. Applied Resources alleges that School-Link had approached Applied Resources and asked if it would supply kiosks to enable School-Link to bid on a very large contract with the New York City Department of Education. School-Link promised Applied Resources that if Applied Resources would supply the kiosks for a successful pilot program, Applied Resources would be the kiosk supplier if School-Link successfully obtained the contract with the New York City Department of Education. In reliance on that promise, Applied Resources supplied the kiosks at no charge to School-Link for the pilot project in New York. The pilot program was successful and School-Link obtained the contract, but

2

School-Link decided to build its own kiosks rather than using Applied Resources to supply the kiosks.

Based on these alleged facts, School-Link filed this lawsuit in this court asserting claims arising from Applied Resources' failure to deliver the contractually agreed upon PADs and kiosks or to refund School-Link's overpayment. School-Link asserts three claims against Applied Resources for (Count I) breach of contract; (II) unjust enrichment, estoppel, and contract implied in law; and (III) conversion. Applied Resources, in turn, has asserted counterclaims against School-Link for School-Link's failure to use Applied Resources to supply kiosks in conjunction with the contract with the New York City Department of Education. Applied Resources asserts five counterclaims against School-Link for (Count I) fraud; (II) promissory estoppel; (III) unjust enrichment; (IV) breach of oral contract; and (V) breach of written contract.

Applied Resources' breach of written contract claim (Count V) alleges that the parties entered into a written "Non-Disclosure and Confidentiality Agreement" and that School-Link breached this agreement by using Applied Resources' proprietary information (ideas, inventions, concepts, etc.) to obtain the contract with the New York City Department of Education. School-Link's current motion to transfer stems from this fifth counterclaim. The Non-Disclosure and Confidentiality Agreement upon which this claim is based contains a forum selection clause which provides that "[a]ny and all actions, claims or lawsuits arising from this Agreement are to be brought in Los Angeles, California." Non-Disclosure and Confidentiality Agreement § 11, at 2. School-Link now asks the court to enforce this forum

selection clause and transfer Applied Resources' fifth counterclaim to the United States District Court for the Central District of California and, additionally, to transfer the entire case to that court.[1]

## LEGAL STANDARD FOR A MOTION TO TRANSFER

A motion to transfer to a more convenient forum is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  *Id.*  Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  The court should consider the following factors in determining whether to transfer a case:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

---

[1] School-Link seeks relief pursuant to Fed. R. Civ. P. 12(b)(3) (improper venue) and 28 U.S.C. § 1404 (transfer).  School-Link is arguably entitled to dismissal of Applied Resources' fifth counterclaim under Rule 12(b)(3), but the only relief expressly sought by School-Link is transfer, not dismissal.  The court will confine its analysis accordingly.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (quotation omitted).  The plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in favor of the movant.  *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).  The party seeking to transfer the case has the burden of proving that the existing forum is inconvenient.  *Id.*

## ANALYSIS

A valid and applicable forum selection clause is "a significant factor that figures centrally in the district court's calculus" in evaluating a motion to transfer.  *Stewart*, 487 U.S. at 29; *accord Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 697 (8th Cir. 1997).  The court must assess the convenience of the forum "given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power."  *Stewart*, 487 U.S. at 29.  A forum selection clause "should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a)."  *Id.* at 31.

To reiterate, the forum selection clause at issue here provides that "[a]ny and all actions, claims or lawsuits arising from this Agreement are to be brought in Los Angeles, California."  By its plain language, this clause applies to actions, claims, or lawsuits that arise from the Non-Disclosure and Confidentiality Agreement.  Applied Resources' fifth counterclaim is such a claim that falls within the scope of this clause.  The clause is not, however, broad enough to encompass the filing of School-Link's lawsuit.  The lawsuit and the claims therein do not arise

5

from the Non-Disclosure and Confidentiality Agreement but rather are based on "a series of written and verbal communications, including sales orders, purchase orders, and invoices," Compl. (doc. 1), ¶ 6, at 2, and pertain to Applied Resources' alleged failure to deliver goods or to refund School-Link's prepayment, *see, e.g.*, *id.* ¶¶ 19, 23-27, 31-32, at 3-5.  Similarly, the clause is not broad enough to encompass Applied Resources' other counterclaims, which arise from Applied Resources supplying the kiosks for the pilot program with the New York City Department of Education and School-Link's subsequent failure to use Applied Resources to supply the kiosks for the contract, *see, e.g.*, Answer (doc. 5), ¶¶ 21-23, 26-27, 29-30, 33-37, at 4-6.  Therefore, those other counterclaims do not "arise from" the Non-Disclosure and Confidentiality Agreement.

Applied Resources argues that the forum selection clause by its terms does not apply to counterclaims because it only requires that actions to be "brought" in California, "brought" is synonymous with filing a lawsuit, and therefore the clause does not apply to counterclaims. The court disagrees with this interpretation.  The clause clearly and unambiguously applies to "all actions, *claims* or lawsuits."  To hold that the word "brought" only applies to "actions" or "lawsuits" would render the term "claim" meaningless.  The clause requires all "claims" to be brought in California.  A counterclaim, which is a type of claim, falls within the scope of this plain language. *See generally, e.g.*, *Publicis Communication v. True N. Communications, Inc.*, 132 F.3d 363 (7th Cir. 1997) (enforcing forum selection clause requiring "[a]ny claim" to be "brought" in Delaware as to counterclaims within the scope of the clause); *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 983 (N.D. Ill. 2003) (enforcing

forum selection clause requiring "any cause of action" to be "brought" in California as to counterclaims within the scope of the clause).

Applied Resources also argues that the clause is permissive rather than mandatory. "Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum" whereas "permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 498 (10th Cir. 2002) (quotations omitted).  In this case, the forum selection clause contains clear language showing that venue is appropriate only in California.  It states: "*Any and all* actions, claims or lawsuits arising from this Agreement *are to be brought* in Los Angeles, California." (Emphasis added.)  The italicized words are language of exclusivity that prohibit litigation anywhere other than in California.  Therefore, this is a mandatory forum selection clause.  *See, e.g.*, *Abreu v. Family Shipping & Serv.*, Case No. 00-CV-0284, 2000 WL 516565, at *1-*2 (E.D.N.Y. Mar. 6, 2000) (transferring case to New Jersey based, in part, on enforceable forum selection clause stating that "all disputes . . . are to be brought in . . . New Jersey").

Given the court's holding that the forum selection clause is valid and enforceable as to Applied Resources' fifth counterclaim and only that claim, then, the court will evaluate the propriety of severing that claim.  *Chrysler Credit*, 928 F.2d at 1519 ("When transferring a portion of a pending action to another jurisdiction, district courts must first sever the action under Rule 21 before effectuating the transfer."); *see generally, e.g.*, *Tab Express Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621 (D. Kan. 2003) (determining that severance

of patent infringement counterclaims was warranted before ordering transfer of those claims). Rule 21 of the Federal Rules of Civil Procedure provides that "[a]ny claim against a party may be severed and proceeded with separately." Whether to sever claims under Rule 21 is within the court's discretion. *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1153 (10th Cir. 1985). This court finds no valid reason to sever the fifth counterclaim from the other claims in this case. This is not a case of misjoinder of a particular party. Furthermore, the parties' claims are properly joined inasmuch as they arise out of the same transaction, occurrence, or series of transactions or occurrences and involve common questions of fact. *See* Fed. R. Civ. P. 20(a) (stating the standard for permissive joinder). Although the fifth counterclaim is sufficiently different from the other claims that it is not necessarily inextricably intertwined with the other claims in terms of the parties' legal theories, *cf. Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F. Supp. 343, 350 (D. Kan. 1996) (denying Rule 21 motion to sever where counts sought to be severed were inextricably intertwined with the remainder of the action), the claims involve such common facts that severance would only result in delay, inconvenience, and added expense. Accordingly, the court concludes that severance of Applied Resources' fifth counterclaim is unwarranted. *See* 7 Charles Alan Wright et al., Federal Practice & Procedure § 1689, at 518-19 (3d ed. 2001) ("[S]everance will be refused if the court believes that it only will result in delay, inconvenience, or added expense.").

The court, then, will evaluate whether the interests of convenience and fairness warrant transferring the entire case to the Central District of California. The court concludes that those interests, on balance, weigh against transferring this case. The forum selection clause

is a significant factor that figures centrally in the court's analysis. By virtue of this clause, the parties agreed to litigate their disputes arising from the Non-Disclosure and Confidentiality Agreement in California. But the only claim that arises from that agreement is the fifth counterclaim and that claim is only one of eight claims in the case. Thus, although the forum selection clause is a significant factor that weighs in favor of transferring this case to California, it weighs only slightly in favor of transfer because it pertains to only a small portion of the parties' dispute.

As to the next consideration – that is, the plaintiff's choice of forum – this case is somewhat unique in the sense that it is typically the defendant who moves to transfer a case to another venue. In contrast, here it is the plaintiff who initially chose this forum and who now seeks to transfer the case to another venue. Under these circumstances, "the burden should be at least as heavy on a plaintiff, seeking to change a forum that he had himself selected, as it is when the defendant is the moving party." 15 Charles Alan Wright et al., Federal Practice & Procedure § 3848, at 393-94 (2d ed. 1986) (citing case law, and observing that "[i]t is one thing to give weight to plaintiff's initial choice of forum, but it seems odd that a plaintiff . . . should have great weight given to [his or] her second choice"). Thus, the plaintiff's initial choice of forum is a factor that weighs in favor of retaining the case here. *See, e.g.*, *Clayman v. Starwood Hotels & Resorts Worldwide, Inc.*, Case No. 02-2597-JWL, 2004 WL 515955, at *2 (D. Kan. Mar. 16, 2004) (plaintiff's choice of forum weighed in favor of court retaining the case even where the plaintiff was the party seeking transfer).

School-Link nonetheless argues that a valid forum selection clause may supersede the presumption in favor of the plaintiff's choice of forum. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) ("[W]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue."); *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("[T]he venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors."); *see also Black & Veatch Const., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 581 (D. Kan. 2000) (noting this general principle). Even if the Tenth Circuit were to adopt this principle of law, the court is not necessarily persuaded that this lack of deference would apply in a case such as this where the party seeking to enforce the forum selection clause is the party who instigated related litigation in a different forum. Nonetheless, even if this principle were to apply it would only pertain to Applied Resources' fifth counterclaim and not the parties' other seven claims. Because those other claims represent the bulk of this case, the weight given to the plaintiff's initial choice of forum would be attenuated only somewhat in light of the forum selection clause.

School-Link also argues that "at least half" of the relevant witnesses and evidence are located in California where School-Link is located. Applied Resources, on the other hand, contends that the witnesses, documents, and tangible things that are in its possession are located in Kansas. Applied Resources also points out that some of the witnesses and documents are in the possession of the New York City Department of Education in the New York area and School-Link's subsidiary in Biloxi, Mississippi. Given the fact that the

10

witnesses and evidence appear to be dispersed among California, Kansas, New York, and Mississippi, then, the court finds that considerations regarding the cost and accessibility of witnesses and other sources of proof is a neutral factor.

Applied Resources contends that the congestion of the courts in the Central District of California compared to that of this court favors retaining the case. The court agrees, and finds that this factor weighs in favor of retaining the case here. *See Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc.*, 351 F. Supp. 2d 1188, 1197 (D. Kan. 2005) ("It is the court's understanding that this court probably has a relatively less congested docket than the Central District of California.").

School-Link contends that California law governs at least the fifth counterclaim, School-Link's related claims and defenses thereto, and arguably the rest of the parties' claims and counterclaims. The court will not decide such potentially complex choice-of-law issues based on the present state of the record. Nonetheless, the court does wish to observe that it is not necessarily persuaded that California law will govern many claims in this case other than the fifth counterclaim. Even so, however, the Tenth Circuit has held that this factor is given little weight if not dealing with a complex question of either state's law. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (holding the "relative simplicity" of a common law claim neutralizes this factor). In this case, all of the parties' claims appear to be relatively straightforward common law claims. To the extent that California law might apply to the claims in the case, the court is unpersuaded that the various claims, which are based on contract, equity, and tort theories, will present complex questions under California law.

11

Accordingly, this factor weighs somewhat in favor of transferring the case to California, but not by much.

All other considerations of a practical nature that make a trial easy, expeditious and economical weigh against transferring the case to California.  Ultimately, the court is not persuaded that either California or Kansas necessarily would be a more efficient forum for the parties.  But, at this point in time, transferring the case would do nothing but frustrate the objectives of making trial easy, expeditious, and economical.

Balancing all of these considerations, then, the court is persuaded that they weigh in favor of retaining the case here.  In so holding, the court is mindful of the significance of the parties' forum selection clause.  The court is, however, equally mindful of the Supreme Court's statement in *Stewart* that a forum selection clause should not be regarded as dispositive in the context of a motion to transfer.  In this case, that forum selection clause involves such a small aspect of this litigation that other considerations of convenience and fairness – namely that the party seeking to enforce the clause already initiated related litigation that is well underway in this court – do not warrant transfer.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Transfer Action or, In the Alternative, to Transfer Defendant's Counterclaim (doc. 6) is denied.

**IT IS SO ORDERED** this 1st day of July, 2005.

                                          **s/ John W. Lungstrum**
                                          John W. Lungstrum
                                          United States District Judge