## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**SCHOOL-LINK TECHNOLOGIES, INC.,**

      **Plaintiff,**

      **v.**                                   **Case No.  05-2088-JWL**

**APPLIED RESOURCES, INC.,**

      **Defendant.**

_____

### MEMORANDUM AND ORDER

This case involves a business dispute between the plaintiff School-Link Technologies, Inc. (SLT) and defendant Applied Resources, Inc. (ARI) arising from ARI's refusal to deliver products to SLT because of SLT's alleged breach of contract.  This matter comes before the court on SLT's motions for summary judgment and partial summary judgment (docs. #73 & #75), ARI's motion to set aside the clerk's entry of default (doc. #94), and SLT's motion to strike ARI's jury demand (doc. #77).  For the reasons explained below, the court will grant ARI's motion to set aside the default, will grant SLT's motion for summary judgment as to ARI's counterclaim for breach of oral contract except with respect to goods ARI supplied for the pilot program with the NYCDOE, and will grant SLT's motion to strike ARI's jury demand.  SLT's motions are otherwise denied.

-1-

## STATEMENT OF MATERIAL FACTS[1]

ARI is in the business of supplying computer hardware for point-of-sale systems. It manufactures and sells "kiosks," which are computers encased in secure, rugged chassis on which card readers, currency adaptors, coin acceptors, or other payment devices are mounted. SLT is in the business of selling food service technology solutions to schools throughout the country. The two companies' business relationship began when SLT received a Request for Proposal (RFP) from the New York City Department of Education (NYCDOE), the largest school district in the nation, for a cafeteria payment system. One of the requirements of the RFP was the inclusion of prepayment machines, or kiosks. SLT contacted ARI, a kiosk vendor, in connection with the preparation of its response to the RFP.

Kristi Noyes was formerly the national account executive for SLT in 2003 and 2004 and she worked on SLT's response to the NYCDOE RFP. She testified in her deposition that SLT received the RFP from NYCDOE in August of 2003. The response deadline was near the end of August, so SLT did not have much lead time to respond. Again, one of the mandatory requirements of the RFP was the inclusion of prepayment kiosks. SLT and its competitors in the school market industry were not offering kiosks at that time, so SLT had to "scramble" to locate a kiosk vendor so that it could provide information regarding kiosks in its response to the NYCDOE RFP. SLT contacted ARI with the idea being that SLT was

---

[1] Consistent with the well established standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to Applied Resources, the nonmoving party.

in a bind, that it needed kiosks very fast if it was going to have any chance of winning the NYCDOE business, that 1,500 kiosks would be needed for final implementation of the NYCDOE contract, and that SLT needed a vendor who could supply quickly, "who could help [SLT] out of the bind [it was] in, who could do the pilot, and would then have the business at New York City schools of 1,500 kiosks."  Noyes Dep. at 67:7-10.  SLT wanted ARI to provide the information needed for its response to the NYCDOE RFP, and it wanted ARI to participate in the pilot project if SLT was ultimately chosen as one of the two finalists for the pilot project.

According to an affidavit submitted by E. Brooks Lilly, founder and president of ARI, SLT told ARI that NYCDOE was seeking to purchase 1,500 kiosks and the associated software for a payment system in school cafeterias.  SLT promised ARI that if ARI would supply the kiosks for a successful pilot program, ARI would be the supplier of kiosks for the NYCDOE contract if SLT successfully obtained that contract.  In reliance on SLT's promise, ARI supplied information for SLT to incorporate into its response to the RFP.  When SLT was named as one of two finalists to participate in the pilot project, ARI supplied the kiosks used in the pilot project at no charge to SLT.  ARI did so in reliance on SLT's representations and promise that if the pilot project was successful and SLT got the NYCDOE business, ARI would be the exclusive supplier of kiosks for that business.  When SLT promised and represented to ARI that it would be the exclusive supplier of kiosks for the NYCDOE business, if that business was awarded to SLT, the parties also discussed and agreed upon pricing.

-3-

According to Ms. Noyes' deposition testimony, unbeknownst to ARI, SLT did not like selling products that it did not make itself.  SLT did not offer a lot of outside third-party products.  She testified that, although SLT had promised to use ARI as the supplier of kiosks for the NYCDOE business, it was her understanding that SLT wanted to be able to offer its own kiosks, its own solution, and that it was "[her] belief that [SLT] wanted to do that all along."  Noyes Dep. at 83:16-17.  An e-mail from Ms. Noyes to Chip Goodman, another individual with SLT, reveals that Ms. Noyes was aware as early as June 30, 2004, of SLT's intent to cut ARI out of the NYCDOE project by building its own kiosks or using a different supplier.

At some point in time, the parties discussed preparing a written contract to address an expanded scope of work involving additional products, their overall relationship and future dealings, and they sought to reduce to writing SLT's representations and promise that ARI would be the exclusive supplier of kiosks to SLT for the NYCDOE project.  During the course of their negotiations regarding the written contract, SLT included language on a purchase order dated August 13, 2004, which stated as follows: "The parties agree that by issuing and accepting this quote and order All Products required by NYC DOE from SL-Tech shall be provided by ARI subject to reaching a mutually agreeable contractual document by September 15, 2004."

According to Ms. Noyes' deposition testimony, however, SLT did numerous things that were in complete opposition to trying to reach a contractual agreement.  For example, in the spring of 2004, SLT had already planned to send one of its employees to a kiosk expo

because SLT wanted to develop its own kiosk instead of using ARI's.  In the late spring of 2004, an SLT employee asked Ms. Noyes to overnight a PAD device made by ARI to him so that another employee at SLT could reverse engineer it.  Also, a representative of SLT made "an extremely disparaging remark about ARI" to potential clients.  Noyes Dep. at 125:17.  SLT invited ARI to ship kiosks to a trade show and participate in SLT's booth as SLT unveiled ARI's new kiosk to SLT's customers, but then SLT cut ARI's labels off the shipping boxes to conceal ARI's involvement.  SLT was secretively, and unbeknownst to ARI, creating or trying to create its own products based on knowledge it had received from ARI.

SLT's proposed "master agreement" contained new and onerous terms that had never before been discussed by the parties.  Ultimately, the parties did not reach a mutually agreeable written contract to govern future dealings by September 15, 2004.

During the time period when SLT had represented and promised that ARI would supply all of the kiosks for the NYCDOE project, SLT contracted under various purchase orders for the production and delivery of kiosks and PAD devices from ARI.  According to an affidavit submitted by Mr. Lilly, ARI agreed to supply these keypads at the stated price, on the stated delivery terms, only because it believed SLT's representation and promise that ARI was going to get the NYCDOE kiosk business.  SLT made advance payment to ARI with its orders.  ARI delivered PADs and kiosks to SLT in the fall of 2004.  In the meantime,

however, SLT violated the parties' Non-Disclosure and Confidentiality Agreement by using ARI's confidential information.[2]

The NYCDOE pilot project ultimately was successful and NYCDOE agreed to purchase software and hardware for the payment system from SLT.[3]  At least as early as November 2004, SLT told NYCDOE that it would not be supplying the ARI kiosks used in the pilot project but would, instead, build its own kiosks to supply to NYCDOE.

In an e-mail from Mr. Lilly to Chip Goodman with SLT dated November 2, 2004, Mr. Lilly informed SLT that ARI had suspended production of products for SLT until the parties reached a resolution to their dealings, and that ARI would not provide the balance of the PAD devices until after the parties agreed to a "concluding document" which clearly terminated their business relationship and confirmed confidentiality to provide protection of ARI's intellectual property.  He stated that ARI would "account for [its] expenses in deploying the NYCDOE pilot and deduct those expenses from the pre-payments made by SL-Tech."  The e-mail concluded that the parties' working potential was vast, "[b]ut now, we're done."  According to the deposition testimony of Shannon Lilly, executive vice president and chief operating officer of ARI, ARI ceased production of the goods previously contracted with SLT because of the breakdown in contract negotiations.

_____

[2] SLT's alleged breach of the parties' Non-Disclosure and Confidentiality Agreement is the subject of a separate lawsuit in California, as that agreement contained a California forum selection clause.

[3] SLT's eventual agreement with NYCDOE was for less than ten percent of what was originally discussed.

SLT immediately responded to Mr. Brooks' e-mail by way of a letter from SLT's attorney dated November 3, 2004.  The letter rejected ARI's offer to enter into any new agreements (presumably referring to Mr. Brooks' demand for a concluding document) and stated that it was treating Mr. Brooks' e-mail as a repudiation and breach of ARI's agreements to supply PADs and kiosks.

ARI delivered product to SLT through December of 2004, but did not entirely fulfill SLT's purchase orders.  Thereafter, ARI did not deliver the remaining keypads and kiosks to SLT.  It is undisputed that ARI did not timely deliver certain goods purchased by SLT by the deadlines agreed upon by the parties even though ARI assessed a separate expedite fee to meet certain critical deadlines; that ARI altogether failed to deliver some of the purchased product to SLT; and that ARI retained and refused to return over $55,000 in SLT's prepayment for goods which ARI refused to supply.  Additionally, the kiosks purchased by SLT to mitigate damages cost substantially more than the kiosks ordered from ARI.

The goods ARI sold to SLT were covered by a warranty of repair or replacement.  Certain goods delivered to SLT failed to perform as warranted.  SLT claims that some of the goods which were delivered by ARI were defective and that ARI refused to credit SLT for those goods or remedy the defective equipment.  Mr. Lilly, however, testified in his deposition that ARI honored its warranty in that ARI fixed and returned all products with respect to which ARI received notice of defects.

Based on these facts, SLT filed this lawsuit against ARI in connection with SLT's

non-NYCDOE purchases[4] from ARI.  SLT asserts claims for breach of contract, breach of

warranty, unjust enrichment, and conversion.  SLT now seeks partial summary judgment on

its breach of contract and breach of warranty claims.

ARI, in turn, asserts counterclaims against SLT in connection with SLT's failure to

use ARI as the exclusive supplier for the NYCDOE contract.  ARI has never been

reimbursed for the expenses it incurred in connection with the NYCDOE project or the

provision of kiosks for the pilot project, and it has not received the profits it expected to

receive from supplying 1,500 kiosks for the NYCDOE contract.  ARI asserts counterclaims

for fraud, promissory estoppel, unjust enrichment, and breach of oral contract.  SLT now

seeks summary judgment on each of ARI's counterclaims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no

genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all

---

[4] The court uses the phrase "non-NYCDOE purchases" loosely here to mean purchases by SLT which do not appear, based on the record, to have been made by SLT to fulfill its obligations under any contract with the NYCDOE.  Rather, those purchases appear to have been made by SLT to satisfy other customers' needs.  Stated otherwise, these seem to be the purchases SLT made from ARI during the interim time period between when SLT responded to the NYCDOE RFP and launched the pilot program, and the time period when SLT was ultimately awarded the NYCDOE contract.

-8-

reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party

must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## ANALYSIS

For the reasons explained below, the court will grant SLT's motion for summary judgment on ARI's counterclaim for breach of oral contract to the extent that claim is barred by the statute of frauds. That claim is not, however, barred by the statute of frauds with respect to goods which SLT already received and accepted, i.e., the goods for the pilot program with the NYCDOE. The court will deny SLT's motions for summary judgment and partial summary judgment in all other respects and will set aside the clerk's entry of default on SLT's breach of warranty claim.

A.     **SLT's Motion for Summary Judgment on ARI's Counterclaims**

    *1.*     *Purchase Contract*

SLT's initial arguments in support of its motion for summary judgment are based on the statement contained in its purchase order dated August 13, 2004, which included the following term: "The parties agree that by issuing and accepting this quote and order All Products required by NYC DOE from SL-Tech shall be provided by ARI subject to reaching a mutually agreeable contractual document by September 15, 2004." SLT contends, first, that the exclusivity restriction was "subject to reaching a mutually agreeable contractual document" and that this is an agreement to make a contract in the future which is not binding because its conditions were to be the subject of future negotiations. In response to this argument, ARI points out that it is not relying on this statement in the purchase order as a basis for its claims. Rather, ARI's theory is that SLT made representations and promises to ARI to induce ARI to help SLT gain the NYCDOE business; those representations and promises were not subject to or conditioned upon the parties reaching a subsequent written agreement; and that only later did SLT express a desire for the parties to enter into a written contract. In short, ARI is not relying on the express terms stated in the purchase order as a basis for its claims in this case. Consequently, SLT's argument that ARI cannot rely on this provision is misplaced.

The second argument SLT raises in connection with this statement in the purchase order is that any claims by ARI other than those predicated on this statement in the purchase order are barred by the parol evidence rule. SLT's theory in this respect is that the parties expressly agreed in this written purchase order that ARI would be the sole supplier for the NYCDOE project only if the parties reached a mutually agreeable written contract by

-11-

September 15, 2004, which they failed to do.  In support of this argument, SLT cites case law involving the parol evidence rule under Kansas common law.  This case, however, involves the sale of goods and therefore the applicable parol evidence rule is set forth in the Kansas Uniform Commercial Code (the Kansas UCC), K.S.A. § 84-2-202.  *See, e.g.*, *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 452-53, 927 P.2d 24, 34-35 (1992) (applying the parol evidence rule set forth in § 84-2-202 in a case involving a contract for the sale of goods); *see also, e.g.*, *Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 763 (10th Cir. 1983) (same).  Here, SLT has addressed the parol evidence rule under Kansas common law, not the Kansas UCC, and therefore in failing to move for summary judgment under the correct legal standard SLT has not met its initial summary judgment burden on this issue. The two legal standards are by no means synonymous.  SLT has not established that the statement in the purchase order was "intended by the parties as a final expression of their agreement," K.S.A. § 84-2-202, with respect to the NYCDOE contract such that the parol evidence rule would apply.  *See, e.g.*, *Betaco, Inc. v. Cessna Aircraft Co.*, 103 F.3d 1281, 1285-92 (7th Cir. 1996) (considering the issue under the Kansas UCC § 84-2-202 of whether the parties intended a document to constitute a final expression of their agreement); *Transamerica*, 723 F.2d at 763 (same).  Even if it were, that term could be explained or supplemented by proof of a course of dealing, usage of trade, or course of performance. *Barbara Oil Co.*, 250 Kan. at 452-53, 827 P.2d at 35.  Additionally, simply because a writing may be final on some matters (e.g., perhaps the sale which was the subject of that particular purchase order) should not be taken to mean that it is final as to all matters between them

(e.g., perhaps the NYCDOE project). *See* K.S.A. § 84-2-202, official UCC comment. The court is not deciding at this time the extent to which the parol evidence rule applies in this case. It is simply denying SLT's motion for summary judgment on this issue for the sole reason that SLT did not move for summary judgment under the correct legal standard. Consequently, SLT has not met its initial summary judgment burden of demonstrating the absence of a genuine issue of material fact showing it is entitled to summary judgment on this basis.

   2.    *Breach of Oral Contract Claim*

   SLT raises several arguments as to why it is entitled to summary judgment on ARI's breach of oral contract claim. SLT relies, first, on the statute of frauds. Contracts for the sale of goods over $500 generally must be in writing and must be signed by the party against whom enforcement is sought. *Wachter Mgmt. Co. v. Dexter & Chaney, Inc.*, 144 P.3d 747, 751 (Kan. 2006); K.S.A. § 84-2-201.[5] Because the NYCDOE contract undisputedly involved

_____

   [5] Unlike SLT's parol evidence argument, SLT relied on the appropriate legal standard under the Kansas UCC for its statute of frauds argument.
   As to SLT's argument that the statute of frauds applies because the alleged promise was not to be performed within a year, the court rejects this argument at this procedural juncture for three reasons. First, SLT has not addressed the legal issue of whether under Kansas law K.S.A. § 84-2-201 is the exclusive statute of frauds provision in a case involving the sale of goods or whether the more general statute of frauds, K.S.A. § 33-106, might also apply. *Cf.* 2 Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 2-201:17, at 331 and § 2-201:78, at 361 (3d ed. 2004) (noting UCC § 2-201 governs the sale of goods to the exclusion of a general statute of frauds). Second, SLT has not provided a factual record which establishes that ARI's portion of the NYCDOE project was necessarily "not to be performed within the space of one year from the making thereof." K.S.A. § 33-106; *see also Nutt v. Knutson*, 245 Kan. 162, 164, 795 P.2d 30, 31 (1989) (noting that contracts of uncertain duration are excluded from the statute of frauds, which covers only

the sale of goods in excess of $500, the parties' oral contract that ARI would be the exclusive supplier of kiosks for the project is not enforceable in the absence of an applicable exception to this general rule.

ARI contends that the statute of frauds does not apply with respect to goods which have been received and accepted, citing *Pedi Bares, Inc. v. P & C Food Markets, Inc.*, 567 F.2d 933, 936 (10th Cir. 1977). In *Pedi Bares*, the Tenth Circuit discussed one of the exceptions to the statute of frauds listed in K.S.A. § 84-2-201. This provision of the Kansas UCC states that a contract which would otherwise be unenforceable for lack of a writing "but which is valid in other respects is enforceable . . . with respect to goods for which payment has been made and accepted or which have been received and accepted." K.S.A. § 84-2-201(3)(c). This exception allows partial performance to serve as a substitute for the required writing, *Geo. C. Christopher & Son, Inc. v. Kansas Paint & Color Co.*, 215 Kan. 185, 192, 523 P.2d 709, 716 (1974), but only for goods which have been received and accepted or for which payment has been made and accepted. Here, the goods which arguably fall within that definition are those supplied by ARI for the pilot project with the NYCDOE[6] because those

those contracts whose performance cannot possibly be completed within a year). Third, ARI raises the argument that partial performance serves as a substitute for the required writing, and SLT has not addressed the potential application of this exception under the more general statute of frauds provision. For each of these reasons, SLT has not established that it is entitled to summary judgment under the general (non-Kansas UCC) statute of frauds provision which applies to contracts not to be performed within one year.

[6] It also includes the goods which SLT purchased from ARI, but those are not the subject of ARI's breach of oral contract claim.

-14-

goods were received and accepted by SLT.  Consequently, SLT's motion for summary judgment based on the statute of frauds is denied with respect to those goods.

SLT's motion based on the statute of frauds is granted, however, with respect to ARI's claim that it was to be the exclusive supplier for 1,500 kiosks for the NYCDOE project.  The only statute of frauds exception ARI has invoked is § 84-2-201(3)(c).  The non-pilot program kiosks do not fall within the ambit of § 84-2-201(3)(c) because those goods were not received and accepted, nor was payment made and accepted for them.  ARI has not directed the court's attention to any other evidence which demonstrates a genuine issue of material fact with respect to any other statute of frauds exception.  Accordingly, the court's analysis of ARI's breach of oral contract claim is narrowed to the goods ARI supplied for SLT's pilot project with the NYCDOE, as the remaining aspect of that claim is barred by the statute of frauds.

SLT contends that SLT's performance is excused by ARI's repudiation.  The court rejects SLT's argument on this issue primarily because, as with SLT's parol evidence argument, SLT did not move for summary judgment under the correct legal standard.  Again, SLT has cited case law involving Kansas common law principles whereas, here, whether and the extent to which ARI's alleged repudiation might excuse SLT's performance is governed by the Kansas UCC and case law involving the relevant statutory provisions under the Kansas UCC.  Additionally, as stated above, the oral contract is only enforceable with respect to the goods ARI had already supplied for the pilot project with the NYCDOE.  SLT has not discussed the implications of the fact that ARI did not repudiate this aspect of the

contract, but rather only arguably repudiated the parties' contract with respect to SLT's non-NYCDOE purchases and the 1,500 kiosks for the NYCDOE project. Furthermore, genuine issues of material fact exist concerning the timing and extent of the parties' respective repudiations.

The court also rejects SLT's argument that ARI has not cited factual support proving SLT's breach of the putative promise. Viewing the evidence in the light most favor to ARI, as of course the court must at this procedural juncture, the record contains genuine issues of material fact regarding the extent to which SLT breached its oral contract with ARI.

SLT's argument that ARI must rely on the future adjudication of the separate lawsuit in California to prove the counterclaims asserted in this matter is also without merit. SLT's argument on this issue is based on a statement in the Pretrial Order in which ARI listed its claimed damages as lost profits on 1,500 keypads and kiosks and, additionally, "[t]o be determined in Central District of California case." Pretrial Order (doc. #91), ¶ 10(b), at 13-14. ARI, however, explains that SLT has misinterpreted this statement in the Pretrial Order, as ARI merely made this notation in the Pretrial Order "in an overabundance of caution." To clarify, the claims ARI is asserting in the California lawsuit are the subject of a series of prior Memorandum and Orders by this court. *See generally School-Link Techs., Inc. v. Applied Res., Inc.*, Case No. 05-2485-JWL, 2006 WL 1064111, at *1-*6 (D. Kan. Apr. 20, 2006); *School-Link Techs., Inc. v. Applies Res., Inc.*, Case No. 05-2088-JWL, 2005 WL 2269182, at *1-*3 (D. Kan. Sept. 16, 2005); *School-Link Techs., Inc. v. Applied Res., Inc.*, Case No. 05-2088-JWL, 2005 WL 1799259, at *1-*7 (D. Kan. July 1, 2005). The court has

previously ruled that all of those claims arise from the Non-Disclosure and Confidentiality Agreement executed by the parties and are subject to a mandatory forum selection clause requiring "[a]ny and all actions, claims or lawsuits arising from [that] Agreement . . . to be brought in Los Angeles, California."  Consequently, those *claims* are not in this lawsuit because they are subject to a mandatory California forum selection clause.  That is not to say, however, that the *issues* involved in the California lawsuit cannot be litigated in this case to the extent that those issues bear on the claims involved in this case.  The claims involved in this lawsuit arise from SLT's alleged promise to use ARI as the exclusive supplier of kiosks on the NYCDOE project.  Because they do not arise from the Non-Disclosure and Confidentiality Agreement, then, they are not subject to the California forum selection clause.  ARI is not at this time seeking a judgment on any of its counterclaims in this case which would depend on resolution of ARI's claims in the California lawsuit.  Thus, the court sees no reason why ARI would need to await adjudication of its claims in the California lawsuit before litigating any and all issues relevant to its counterclaims in this case.  In sum, SLT has not presented any argument which persuades the court that SLT is entitled to judgment as a matter of law on ARI's claims in this lawsuit simply because some of the issues involved in resolving those claims might also be involved in the pending California case.

### 3.    *Promissory Estoppel Claim*

Promissory estoppel is a doctrine by which courts view performance in reasonable reliance on a promise as sufficient to create a legally binding contract where a contract

otherwise lacks consideration. *Decatur County Feed Yard, Inc. v. Fahey*, 266 Kan. 999, 1010-11, 974 P.2d 569, 577-78 (1999). Kansas courts apply the rule on promissory estoppel set forth in the Restatement (Second) of Contracts § 90 (1979). *Id.* at 1010, 974 P.2d at 577; *see also EDO Corp. v. Beech Aircraft Corp.*, 911 F.2d 1447, 1454 n.7 (10th Cir. 1990). Under that rule, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement § 90(1). Of course, a promissory estoppel claim does not necessarily give rise to the full range of damages of an ordinary breach of contract claim; rather, "[t]he remedy granted for breach may be limited as justice requires." *Id.* & cmt. d.

SLT's first argument with respect ARI's promissory estoppel counterclaim is that this claim is barred by the statute of frauds. The Kansas Supreme Court has held that where a breach of oral contract claim is barred by the Kansas UCC statute of frauds, K.S.A. § 84-2-201, the doctrine of promissory estoppel may nonetheless render that promise enforceable if application of the statute of frauds would otherwise "work a fraud or a gross injustice upon the promisee." *Decatur Co-op. Ass'n v. Urban*, 219 Kan. 171, 178, 547 P.2d 323, 329 (1976); *accord Bittel v. Farm Credit Servs.*, 265 Kan. 651, 661, 962 P.2d 491, 498 (1998). The rationale for this rule is that the statute of frauds was enacted to prevent fraud and injustice, not to foster or encourage it, and the court should not permit it to be used as a shield to protect fraud or to enable one to take advantage of his or her own wrong. *Decatur Co-op. Ass'n*, 219 Kan. at 178-79, 547 P.2d at 329; *see also Glasscock v. Wilson Constructors, Inc.*,

627 F.2d 1065, 1067 (10th Cir. 1980) ("The court in *Decatur* made it clear that the statute of frauds may not be used as a shield to protect fraud.").  Before the doctrine of promissory estoppel can be invoked in a case involving the statute of frauds the promisee must first show by competent evidence that a valid and otherwise enforceable contract was entered into by the parties, *Bittel*, 265 Kan. at 661, 962 P.2d at 498, meaning the agreement must contain all material elements of a contract, *Owasso Dev. Co. v. Assoc'd Wholesale Grocers, Inc.*, 19 Kan. App. 2d 549, 551, 873 P.2d 212, 214 (1994); *see also O'Bryan v. Wendy's Old Fashion Hamburgers*, Case No. 96-2227-JWL, 1997 WL 158296, at *10-*11 (D. Kan. Mar. 19, 1997).  The promisee must also show that the facts of the case justify application of the doctrine, and promissory estoppel should be applied only if a refusal to enforce the promise would be virtually to sanction the perpetration of fraud or would result in other injustice. *Bittel*, 265 Kan. at 661, 962 P.2d at 498-99.  Thus, the doctrine of promissory estoppel may be applied to cases where the statute of frauds would otherwise apply as a defense. *Glasscock*, 627 F.2d at 1067.  In arguing that ARI's promissory estoppel claim is barred by the statute of frauds, SLT did not address this separate legal standard but instead categorically lumped together its statute of frauds argument with respect to all of ARI's counterclaims.  Having failed to address the correct legal standard, then, SLT has not met its summary judgment burden of demonstrating it is entitled to summary judgment on ARI's promissory estoppel counterclaim on the grounds of the statute of frauds.

SLT also argues that it is entitled to summary judgment on ARI's promissory estoppel counterclaim because ARI's reliance was not reasonable as a matter of law in light of the

written provision in the August 13, 2004, purchase order which, SLT contends, meant that ARI would serve as the exclusive supplier for the NYCDOE contract only if the parties reached a mutually agreeable written document by September 15, 2004. But, the provision does not expressly contain such "only if" language. More obviously, however, the statement upon which ARI purportedly relied occurred long before this purchase contract in August of 2004. Additionally, SLT has not established the timing of ARI's delivery of the goods for the pilot project in relation to the August 2004 purchase order. Simply put, SLT's relatively perfunctory one paragraph argument on this element does not even begin to address the issue of reasonable reliance under the facts of this case with the level of detail necessary for SLT to meet its burden of demonstrating it is entitled to summary judgment on this counterclaim.

SLT's argument that its alleged commitment to purchase exclusively from ARI is too indefinite to constitute an enforceable contract meets with the same fate. SLT's argument on this issue is that because the parties left something to further negotiations the alleged promise was "nothing more than an agreement to further negotiate," citing *Owasso Development Co.*, 19 Kan. App. 2d at 551, 873 P.2d at 214. In *Owasso*, however, it was clear to the court that the promisor's alleged promise was nothing more than an agreement to further negotiate. By contrast, in this case, viewing the evidence in the light most favorable to ARI as the nonmoving party, the summary judgment record reflects that the parties' agreement constituted an enforceable contract in all material respects (except for a

writing) around the time SLT was preparing its response to the NYCDOE RFP.  Thus, the court disagrees with SLT's characterization of the summary judgment record.[7]

SLT's final argument concerning ARI's promissory estoppel claim is that ARI has not shown that it would sanction the perpetration of fraud or result in injustice if the court did not enforce SLT's promise to use ARI as the exclusive supplier on the NYCDOE contract. SLT's rationale is that ARI admits its prior breaches and repudiation, and therefore SLT's mere refusal to perform the contract by seeking another vendor was justified by independent reasons.  Again, the court cannot agree with SLT's characterization of the evidence at this procedural juncture.  Viewing the summary judgment record in the light most favorable to ARI, it appears that SLT used ARI to obtain the contract with NYCDOE, that SLT could not have fulfilled one of the mandatory requirements of the RFP (prepayment kiosks) without ARI's assistance, that SLT stole ARI's confidential information in an effort to design and build its own kiosks so that it could cut SLT out of the NYCDOE deal, that SLT intended to do so all along, that SLT did not negotiate in good faith to reach a written contract with ARI, and that SLT reneged on its promise to use ARI as the exclusive supplier for the NYCDOE project for no apparent reason.  Certainly, a rational trier of fact could conclude that not enforcing SLT's promise to use ARI as the exclusive supplier on the NYCDOE project would essentially sanction the perpetration of fraud or result in injustice.  Accordingly, SLT's motion for summary judgment on this claim is denied.

---

[7] SLT also does not address ARI's argument concerning the Kansas UCC's gap-filler provisions.  *See* K.S.A. § 84-2-204 and Kansas comment, 1996.

### 4.    *Unjust Enrichment Claim*

The basic elements of an unjust enrichment claim under Kansas law are

(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Haz-Mat Response, Inc. v. Certified Waste Servs.*, 259 Kan. 166, 177, 910 P.2d 839, 847

(1996).  SLT argues that it is entitled to summary judgment on ARI's unjust enrichment

claim because SLT did not accept any benefit in its dealings with ARI.  SLT contends that

it was overwhelmingly harmed in its dealings with ARI because SLT paid for useless

equipment ARI has refused to accept for return or to repair and that ARI made a substantial

profit on its dealings with SLT due to its significant profit margin on the items it sold to SLT.

ARI, on the other hand, contends that the summary judgment record reflects that it provided

SLT with the products, services, support, and know-how to obtain the NYCDOE business

and that, without the products and services supplied by ARI, SLT would not have won the

NYCDOE contract.  At this procedural juncture, viewing the evidence in the light most

favorable to ARI, the court accepts ARI's characterization of the factual record.  Neither

party, however, has addressed the legal issue of whether the benefit ARI purportedly

conferred on SLT is the type of benefit which would support an unjust enrichment claim.

As such, SLT has not established that it is entitled to summary judgment on this claim.

SLT also contends that the existence of the putative oral contract precludes ARI's

reliance upon the equitable doctrine of unjust enrichment.  Quasi-contractual remedies such

as unjust enrichment are not available when an enforceable express contract regulates the parties' relations with respect to the disputed issue. *Ice Corp. v. Hamilton Sundstrand, Inc.*, 444 F. Supp. 2d 1165, 1170 (D. Kan. 2006). But an unjust enrichment theory may be applicable if the contract is void, unenforceable, rescinded, or waived. *Id.* at 1171. In this case, SLT contends, at least in part successfully, that any putative oral contract that may have existed between the parties concerning ARI being the exclusive supplier of kiosks for SLT's contract with the NYCDOE is unenforceable under the statute of frauds. Hence, to this extent no enforceable contract exists precluding an unjust enrichment claim. SLT's motion for summary judgment on ARI's unjust enrichment claim is denied.

5.    *Fraud*

SLT argues that it is entitled to summary judgment on its fraud claim because plaintiff has failed to prove a present intent to defraud. Again, viewing the evidence in the light most favorable to ARI, the court disagrees. ARI has submitted deposition testimony from SLT's then-national account manager, Ms. Noyes, who worked on SLT's response to the NYCDOE RFP. A rational trier of fact could conclude based on the summary judgment record that SLT used ARI to respond to the NYCDOE RFP and for the pilot project, but that SLT never intended to actually use ARI to fulfill the contract.

SLT's next argument with respect to ARI's fraud claim is based on the well-recognized principle that the existence of a contractual relationship bars the assertion of tort claims covering the same subject matter governed by the contract. *See Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 241 F. Supp. 2d 1123, 1151 (D. Kan. 2002). Stated another

way, tort duties may not be imposed on a party where the party's duties and rights are specifically defined by contract.  *See id.*  Here, however, ARI's fraud claim is essentially that SLT induced ARI into providing kiosks for the pilot program and further induced ARI into entering into contracts to sell goods other than those for the NYCDOE project, all in reliance on SLT's fraudulent statement that it was intending to use ARI as its exclusive supplier for the NYCDOE project.  To the extent that SLT relies on the statement in the August 2004 purchase order concerning the parties' intent to attempt to reach a mutually agreeable written contract in relation to the NYCDOE project, the court has previously recognized that fraudulent inducement to enter a contract constitutes a tort independent of a claim for breach of the same contract.  *Id.* at 1152; *see also Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1462 (D. Kan. 1995).  The August 2004 purchase order, which includes the statement upon which SLT relies, was purportedly one of the contracts SLT fraudulently induced ARI to enter into.  Consequently, this term contained in the August 2004 purchase order does not bar ARI's fraud claim.

SLT's final argument in its motion for summary judgment on ARI's counterclaims is that ARI had no right to rely on the alleged misrepresentation.  SLT's argument on this issue is similar to the reliance argument SLT advanced with respect to ARI's promissory estoppel claim.  Again, the alleged reliance predated the August 2004 purchase order.  The court has no difficulty concluding that ARI has raised a genuine issue of material fact that ARI in fact relied on SLT's promise that ARI would be the exclusive supplier for the NYCDOE project

and that ARI's reliance was reasonable and justifiable at that time.  Accordingly, SLT's motion for summary judgment on ARI's fraud counterclaim is denied.

**C.**     **Analysis: SLT's Motion for Partial Summary Judgment**

      *1.*     *SLT's Breach of Contract Claim*

It is uncontroverted that SLT contracted with ARI for the production and delivery of kiosks and personal access devices (PADs), that SLT paid in advance for those goods, that ARI refused to deliver some of the purchased product to SLT as contracted, and that ARI has retained and refused to return over $55,000 from SLT's pre-payment for goods which ARI refused to supply.  ARI nonetheless contends that SLT is not entitled to summary judgment because SLT's material breach (in failing to honor its agreement that ARI would be the exclusive supplier for the NYCDOE contract) justified or excused ARI's failure to perform the contracts embodied in the purchase order.  In this respect, ARI relies on the affidavit of Mr. Lilly which states that ARI agreed to supply SLT with those keypads at the stated price on the stated delivery terms only because it believed SLT's representation that ARI would also get the NYCDOE kiosk business.  ARI also contends that when SLT breached the parties' Non-Disclosure and Confidentiality Agreement by using ARI's confidential information, SLT undermined ARI, its business, and its confidence and ongoing relationship with SLT.

As discussed previously, the contract relied upon by ARI (i.e., that SLT would use ARI as the exclusive supplier of kiosks on the NYCDOE project) is barred by the statute of frauds except to the extent that ARI delivered goods for the pilot project, because those

goods were delivered and accepted.  The fact that the contract is not barred by the statute of frauds with respect to the goods for the pilot project does not avoid the statute of frauds with respect to the remainder of the contract relating to the non-pilot project goods.  *See* 2 Lawrence, *supra*, § 2-201:281, at 465 (exception for goods received and accepted only avoids the statute of frauds with respect to those goods; it does not make the entire oral contract enforceable as to the undelivered goods).  Consequently, ARI cannot use the alleged contract with respect to the non-pilot program goods as a defense.  *See* K.S.A. § 84-2-201(1) (stating "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action *or defense*" (emphasis added)).  Thus, ARI's argument that its performance is excused with respect to the non-NYCDOE goods must rest, if at all, on SLT's alleged breach in failing to pay for the NYCDOE pilot-program goods.

Here, the fundamental flaw in both parties' summary judgment arguments on this issue is that neither has addressed whether, under the legal standards set forth in the Kansas UCC, their agreement relating to the non-NYCDOE goods and their agreement relating to the NYCDOE pilot-program goods were both a part of the same contract or whether they involved separate contracts.  If the two agreements constituted separate contracts, then, absent compliance with the scheme set out in K.S.A. § 84-2-609, ARI cannot justify its non-performance on the contract for the non-NYCDOE goods simply because of SLT's non-performance on the NYCDOE pilot-program goods.  *See Nat'l Farmers Org. v. Bartlett & Co.*, 560 F.2d 1350, 1356 (8th Cir. 1977) (a party to a contract may not refuse performance simply because the other party has breached a separate contract between them); *Northwest*

*Lumber Sales, Inc. v. Continental Forest Prods., Inc.*, 495 P.2d 744, 749 (Or. 1972) ("Neither the Uniform Commercial Code nor general contract law gives either party to a contract the right to refuse performance because the other has breached a separate contract between them."); Restatement (Second) of Contracts § 240 cmt. b (1979). If, on the other hand, the two agreements were part of the same contract, then the court must apply the applicable provisions of the Kansas UCC and case law thereunder. At this procedural juncture, SLT has not established that delivery of the two sets of goods was necessarily unrelated or that ARI is not entitled to relief under K.S.A. § 84-2-609 and, therefore, it has not established that it is entitled to summary judgment on this basis.

ARI also contends that SLT cannot enforce the contracts for the sale of non-NYCDOE purchases because ARI was fraudulently induced to enter into those contracts. Certainly, it is well established that a contract is voidable if it was induced by fraud. *McKay v. Clark*, 162 Kan. 653, 659, 178 P.2d 679, 684 (1947); Restatement (Second) of Contracts § 164(1) (1979). Here, the court has already explained (with respect to ARI's affirmative fraud counterclaim) that a rational trier of fact could find based on the summary judgment record that ARI was fraudulently induced to enter into those contracts. Consequently, SLT is not entitled to summary judgment on its breach of contract claim because a genuine issue of material fact exists concerning whether that contract is voidable.[8]

_____

[8] In light of the court's ruling that SLT has not shown that it is entitled to summary judgment on its breach of contract claim in any event, the court declines to address ARI's estoppel and offset arguments here. The parties' estoppel arguments are too brief and undeveloped for the court to engage in any type of meaningful estoppel discussion. And,

2.      *SLT's Breach of Warranty Claim*

The clerk entered default on SLT's breach of warranty claim (doc. #92) on December 21, 2006.  On January 4, 2007, ARI filed a Motion to Set Aside the Clerk's Entry of Default (doc. #94).  The court may set aside an entry of default for "good cause shown."  Fed. R. Civ. P. 55(c).  The principal factors the court considers in determining whether a defendant has met this good cause standard are (1) whether the default was the result of culpable conduct of the defendant, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant presented a meritorious defense.  *Hunt v. Ford Motor Co.*, 65 F.3d 178, 1995 WL 523646, at *3 (10th Cir. Aug. 29, 1995) (unpublished table opinion).  The good cause standard for setting aside an entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from a default judgment.  *Dennis Garber & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997).

Mindful that the interests of justice favor resolution of disputes on their merits, the court believes that ARI has demonstrated good cause for setting aside the entry of default. The entry of default was not the result of any culpable conduct by ARI, but rather appears to have resulted solely from ARI's inadvertence.  Additionally, ARI has presented a meritorious defense inasmuch as Mr. Lilly testified in his deposition that ARI believed it had

---

ARI's offset argument goes to the issue of damages, not liability, and the court understands SLT's motion on its breach of contract claim to be directed solely to the issue of liability. Moreover, the parties have not addressed the potential impact of the provisions of the Kansas UCC on the availability of offset.

fully honored its warranty by fixing and returning all products with respect to which ARI received notice of defects.  To the extent that SLT claims it will be prejudiced by the fact that discovery is now closed, the court finds it significant that SLT has not articulated what discovery it believes it will need to undertake in order to prove this claim.  Indeed, in order for SLT to obtain a default judgment, as opposed to simply an entry of default, SLT would have to prove damages on its breach of warranty claim in any event.  It appears to the court that SLT would not need to conduct much more discovery on this claim to prove liability than it would need to prove damages, and that this proof will probably lie largely in the hands of SLT, not ARI.  The trial of this case is still some two months off.  If SLT truly needs to pursue discovery, the parties may agree to reopen discovery on this claim.  *See* Pretrial Order (doc. #91), ¶ 13, at 14.  If they are unable to reach such an agreement, SLT can file a motion for leave to reopen and expedite discovery on this claim.  The court would be inclined to grant any such motion in order to alleviate any prejudice SLT might otherwise suffer by ARI's belated defense of this claim.

The court is unpersuaded by SLT's argument that Judge Waxse's prior Memorandum and Order (doc. #79) is the law of the case on this issue.  Judge Waxse considered the Rule 15(a) issue of whether ARI should be allowed to amend its answer.  While the court recognizes that Judge Waxse's decision provided a necessary precursor to the entry of default, the motion to set aside the entry of default technically involves a different procedural posture and standard.  Accordingly, the court will grant ARI's motion to set aside the entry of default.

The court will deny SLT's motion for summary judgment on this claim.  SLT's motion is predicated on the declaration of Terry Roberts, SLT's chief operating officer, that certain goods SLT purchased from ARI failed to perform as warranted and that ARI refused warranty service or credits for many of those defective goods.  According to the deposition testimony of Mr. Lilly, however, ARI believed it had fully honored its warranty by fixing and returning all products with respect to which ARI received notice of defects.  Viewing the evidence in the light most favorable to ARI, Mr. Lilly's testimony on this issue presents a genuine issue of material fact precluding summary judgment on SLT's breach of warranty claim.

## MOTION TO STRIKE JURY DEMAND

Finally, the court turns to Plaintiff's Motion to Strike Defendant's Untimely Jury Demand (doc. #77).  It is undisputed that ARI did not make a timely Rule 38 demand for a jury trial of the claims in this case and thereby waived its right to a jury trial.  *See Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992); Fed. R. Civ. P. 38(b), (d).  Although the court has discretion to order a jury trial later upon motion by a party, *see Jolivet*, 966 F.2d at 577; Fed. R. Civ. P. 39(b), ARI did not file any motion pursuant to Rule 39(b).  Instead, ARI simply filed a Request for Jury Trial (doc. #70) on November 14, 2006.  Thus, the court could grant SLT's motion to strike this request for the sole reason that the request was procedurally improper in that it was not a timely Rule 38 demand or a motion pursuant to

Rule 39(b).  Instead, however, the court will construe the Request for Jury Trial as a Rule 39(b) motion.

"[A]bsent strong and compelling reasons to the contrary, a district court should exercise its discretion under Rule 39(b) and grant a jury trial." *Nissan Motor Corp. in U.S.A. v. Burciaga*, 982 F.2d 408, 409 (10th Cir. 1992) (per curiam).  In this case, the court believes there are strong and compelling reasons for not granting ARI's belated request for a jury trial.  As a threshold matter, the court notes that ARI filed its Request for Jury Trial more than eighteen months after completion of the parties' initial round of pleadings; that the Request for Jury Trial itself offers no explanation for the delay; and that ARI also did not file a response to SLT's motion to strike ARI's Request for Jury trial.  Thus, despite the opportunity to address this issue, ARI still has not offered any explanation for the delay or provided any reason which persuades the court that it should invoke its discretion and grant ARI's belated request.  In short, ARI has not even attempted to show that it is entitled to relief under Rule 39(b).  *See Dill v. City of Edmond*, 155 F.3d 1193, 1208 (10th Cir. 1998) (holding it is not an abuse of the court's discretion to deny a Rule 39(b) motion where the party seeking a jury trial offers no excuse for an untimely request made more than a year and a half after the original complaint was filed).

In addition, the court believes that this case, in particular, is far better suited to a trial to the court than it is to a jury trial.  This is not a negligence case or an employment discrimination case where the jury can be fairly easily tasked with its role as the finder of facts.  Instead, this is a commercial transaction which involves a multitude of mixed

questions of law and fact.  Many of the issues involve complex, interrelated, and potentially

confusing facts, legal standards, and remedies.  Although the court would ordinarily be

inclined to grant a belated request for a jury trial, perhaps even one as late as ARI's here, the

court simply does not believe that, in the absence of a timely invocation of the parties'

Seventh Amendment rights, this is the type of case where a jury trial ultimately would result

in the just, speedy, and inexpensive determination of this case.  Accordingly, the court will

exercise its discretion and deny ARI's belated request for a jury trial.

**IT IS THEREFORE ORDERED BY THE COURT** that SLT's Motion for

Summary Judgment on Defendant's Counterclaims (doc. #73) is granted in part and denied

in part as set forth above.

**IT IS FURTHER ORDERED THAT** SLT's Motion for Partial Summary Judgment

on Its Breach of Contract Claims (doc. #75) is denied.

**IT IS FURTHER ORDERED THAT** ARI's Motion to Set Aside the Clerk's Entry

of Default (doc. #94) is granted.

**IT IS FURTHER ORDERED THAT** SLT's Motion to Strike Defendant's Untimely

Jury Demand (doc. #77) is granted.

-32-

**IT IS SO ORDERED** this 25th day of January, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge